FILED

2008 Feb-29  PM 03:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **DONNA L. BALLARD** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:06-cv-942-UWC** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff brings this action pursuant to Section 205(g) of the Social Security Act,

42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of

the Social Security Administration ("SSA").  This Court finds the Administrative Law

Judge's ("ALJ") decision, which has become the decision of the Commissioner, is not

supported by substantial evidence.  Therefore, for the reasons elaborated herein, the Court

will **REMAND** the decision denying benefits.

### I.  Procedural History

Plaintiff filed an application for disability insurance benefits in November 2003.

(R. 11.)  This application was denied administratively at the initial and reconsideration

stages.  Plaintiff requested a hearing before an ALJ, which was held on August 30, 2005,

1

in Birmingham, Alabama.  (R. 11.)  On December 6, 2005, the ALJ denied the claim. (R.

11.)  This denial became the final decision of the Commissioner of the SSA when the

Appeals Council refused to grant review on March 22, 2006.  (R. 11.)  Having timely

pursued and exhausted her administrative remedies, Plaintiff filed an action for judicial

review in Federal District Court pursuant to section 1631 of the Social Security Act, 42

U.S.C. § 1383(c)(3).

## II.  Factual Background

At the time of the hearing, Plaintiff was a 52 year-old woman who completed high

school and some distance learning courses in business and floral arranging.  (R. 21.)

Plaintiff has past relevant work experience as a grocery store shipping and receiving

clerk, office inventory/scheduling worker, restaurant cashier/manager and grocery store

cashier/manager.  (R. 12.)  Plaintiff has not engaged in substantial gainful activity since

on or about April 16, 2003.  (R. 12.)  She suffers from arthritis in her feet, legs and hands,

irritable bowel syndrome and vision problems.

### A.  Pain:

In June 1996, Plaintiff complained to Dr. Dewey Jones of pain in her right heel

that had persisted for two to three months.  (R. 120.)  Dr. Jones recommend injections and

rehabilitation.  While it is not clear from the record whether she received such treatment,

she had improved slightly when she returned a few weeks later.  Dr. Jones recommended

she find other work.  (R. 120.)

2

Several years later, in November 1998, an x-ray of Plaintiff's right foot showed a fracture. (R. 113.) She was recovering on an air equalizer shoe. (R. 113.) The following month, her foot showed increased swelling, but was healing by January of 1999. (R. 113.) She was told to return as needed.

A July 1999 MRI of Plaintiff's right knee showed a possible tear of the cartilidge. (R. 111.) Plaintiff complained of having pain when going up and down stairs. Vioxx did not help and her insurance did not cover physical therapy. Dr. Jones prescribed rehabilitation exercises and Lortab. (R. 110.) Ultimately, Dr. Jones performed surgery to repair the problem on October 5, 1999. (R. 110.)

When Plaintiff returned for a follow up visit on October 13, Dr. Jones' notes indicate Plaintiff did not need anything for pain because she was working sitting down. She was to continue therapy for a week and return to her normal duties on October 25. (R. 107.) On a November 11, visit Dr. Jones noted no significant pain with stooping or squatting. Plaintiff was discharged from physical therapy and counseled to continue home exercise. (R. 107.)

Approximately ten days later, she returned complaining of cramps in her hands and feet, as well as shoulder pain. (R. 156 .) She had an injection in the shoulder. (R. 159.) Several months later, in April, 2001, she complained of fullness or swelling of the face, hands, and upper extermities more than lower extremities. She was given an injection, prescribed Lorcet and on put on light duty for 2-4 weeks, preferably with a different job

where she would not be required to perform lifting, stooping, bending, pulling or similar duties.  (R. 140, 152.)

The following month, she continued to complain of shoulder and neck pain.  Her shoulder MRI revealed "impingement of the supraspinatus due to acromioclavicular spurring with surface erosion as well as internal tendinosis but no full thickness retraction or perforation."  (R. 105.)  Her neck MRI revealed some arthritis without significant disc bulge, herniation or stenosis.  (R. 103-04.)   Approximately one week later, on May 21, 2002, Plaintiff underwent left shoulder surgery.  By the end of May, she was doing fairly well and had little pain.  By June 26, she was doing reasonably well and was released to return to office work with no lifting on July 7, 2002.  (R. 99.)

A consultative examination was performed on December 23, 2003, by Dr. Thirston Phillips.  (R. 216-19.)  This examination revealed some tenderness over her left knee.  Dr. Phillips made the following findings:

> **The following functional assessment is based solely on today's limited evaluation and in no way reflects a functional capacity evaluation**. . . .  I do not deny she has pain in these joints. . . . **[T]here is no physical evidence on today's exam suggesting any limitations with standing, walking, or sitting.  In order to determine specific tasks that she can and cannot perform, a functional capacity evaluation might be helpful**.  Based solely on today's limited evaluation and in my clinical judgment, the claimant has no limitations with standing, walking, or sitting.

(R. 216-19.)  Dr. Thirston did, however,  find Plaintiff had limitations with respect to Plaintiff's ability to lift.

B.   Colitis:

In August 1998, Plaintiff had a diagnostic procedure after complaining of gastric

pain.  The procedure showed no erosions or ulcers.  (R. 134.)  A March 1999 colonoscopy

performed by Dr. Robert Marks was scheduled after she complained of intermittent

diarrhea for the past year, as well as rectal bleeding and  passing flesh that looked like

alligator skin.  (R.182.)  Her pathology report showed thickened membranes and chronic

inflamation; she was diagnosed with colitis.[1]  (R. 186-87.)  On February 23, 1999,

Plaintiff indicated her diarrhea was better with Colestid.  A CT scan was unremarkable

except for fatty tissue in her liver.  (R. 177.)

The following month, Plaintiff reported watery diarrhea, occasional rectal bleeding and

lower abdominal pain that was worse after eating.  (R. 178.)

Around mid-summer of 1999, she had colon surgery.  (R 161.)  By early March,

2001, she was still having moderate problems with her stomach, bowels and colon.

However, because of problems with her insurance she was unable to visit the doctor

frequently and had limited access to medications.  (R. 153.)  In September of that same

year, she reported continued irritable bowel difficulties that were minimally relieved with

---

[1]  Colitis is an acute or chronic inflammation of the membrane lining the large intestine or
bowel. Colitis causes inflammation and sores, called ulcers, in the top layers of the lining of the
large intestine. The inflammation makes the colon empty frequently, causing diarrhea. Ulcers
form in places where the inflammation has killed colon lining cells. The ulcers bleed and produce
pus and mucus. Symptoms include abdominal pain, diarrhea, rectal bleeding, painful spasms
(tenesmus), lack of appetite, fever, and fatigue.

medication.  She noted that she had stopped most medications because of poor response and/or financial reasons.  On examination there was mild to moderate tenderness in her abdominal area.  (R. 146-47.)

The following year, on April 11, 2002, she reported on-going colitis problems.  (R. 140.)  She had another colonoscopy around October 10, 2002.  (R. 173.)  The pathology report showed no active colonitis or cancer.  (R. 175-76.)  Later that month, Plaintiff reported she was eating only one meal a day due to diarrhea.  (R. 243.)

On December 5, 2002, continued to complain of diarrhea, irritable bowel problems and pain.  Her recent colonoscopy found no evidence of gross colitis.  However, she did have a small benign tubular tumor.  She was prescribed Colestid to help with diarrhea.  She was also prescribed Lorcet.  (R. 172.)  The following week, she had a another gastric procedure.  The biopsy results were negative.  (R. 169, 171.)  Plaintiff also reported side-effects from her medications.  Her primary care physician, Dr. Sara R. Walker, who has treated Plaintiff since September 2002,  described Plaintiff's condition as dumping syndrome.[2]  (R. 242.) [3]

During the administrative hearing, Plaintiff testified that she has visited the doctor regularly due to financial limitations.  For this same reasons, she cannot purchase

---

[2]  Dumping syndrome is a group of symptoms that occur when food or liquid enters the small intestine too rapidly. These symptoms include cramps, nausea, diarrhea, and dizziness.

[3]  Prior to treatment by Dr. Walker, Plaintiff's primary care physician was Dr. Ronald . D. Kittinger, who treated Plaintiff for approximately three years.

regularly medications.  (R. 26.)  Plaintiff also testified that if she eats a meal she must go to bathroom approximately one hour later and her bowel movements are watery.  She experiences these colitis symptoms almost daily.  (R. 28, 31.)

After the administrative hearing, the ALJ found that Plaintiff suffers from severe impairments, but that the impairments do not meet or equal a listing. (R. 15.)  The ALJ further found that because of Plaintiff's impairments, Plaintiff could not perform her past relevant work. (R. 16.)  However, Plaintiff could perform light work.  (R. 16.)  The ALJ noted that Plaintiff's orthopedic procedures were performed prior to her date of onset. Additionally, the ALJ noted the results of Plaintiff's various conlonoscopies.

### III.  Controlling Legal Principles

A disability claimant has a heavy, but not insuperable, burden to establish entitlement to benefits.  *Mims v. Califano*, 581 F.2d 1211, 1213 (5th Cir. 1978).  The district court's standard or scope of review is limited to determining whether the substantial evidence support's the Commissioner's decision.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  Additionally, the Court must determine whether proper legal standards were applied.  *Lewis v. Callahan*, 125 F. 3d 1436, 1439 (11th Cir. 1997) (citing *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987)).

Substantial evidence is more than a scintilla, but less than a preponderance.  It is such evidence a reasonable mind would accept as adequate to support a conclusion.  *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Bloodsworth v. Heckler*, 703

F.2d 1233, 1239 (11th Cir. 1983).  In contrast, the Commissioner's legal conclusions are more closely scrutinized.  "The [Commissioner's] failure to apply the correct law or to provide the reviewing Court with the sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."  *Cornelius v. Sullivan*, 969 F.2d 1143, 1145-45 (11th Cir. 1991).

Applicable agency regulations require a sequential evaluation of adult disability claims.  20 C.F.R. § 404.1520 (1983).  The first consideration is whether the claimant is working.  If the claimant is working, she is not disabled.  If the claimant is not working, the Commissioner must determine whether the claimant suffers from a severe impairment.  If the claimant does not suffer from a severe impairment, she is not disabled. If the claimant suffers from a severe impairment, then the Commissioner must consider whether the claimant meets any of the listings in 20 C.F.R. pt 404, subpt P, app. 1 ("Listing"), which details "impairments which are considered severe enough to prevent a person from doing any gainful activity."  20 C.F.R. § 404.1520(a).  *See Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985).  If the claimant's medical profile meets the criteria for an impairment in the "Listing," then the claimant is disabled by law and no further inquiry is necessary.

The burden is on the claimant to show that she meets the criteria under the listing. To meet the listing, the claimant must be (1) diagnosed with a condition that is listed or its equivalent, and (2) provide objective medical reports documenting that this condition

meets the specific criteria of the applicable listing and duration requirement.  *See Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987).

When a claimant's "severe" impairment does not fall within a Listing, but nonetheless restricts her ability to perform basic work activities, the ALJ must then assess the claimant's residual functional capacity and the range of work activities that the claimant could perform despite his impairments.  This evaluation must give consideration to claimant's subjective complaints, accounting for nature of pain, medication, treatment, functional restrictions, claimant's daily activities, and other relevant factors.  20 C.F.R. § 404.1512.

Additionally, pursuant to 20 C.F.R. § 404.1523, the ALJ is required to consider the disabling effect of multiple impairments:

> In determining whether your physical or mental impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all your impairments without regard to whether any such impairments if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find that you have a medially severe combination of impairments, we will determine that you are not disabled.

Pain alone can be disabling.  When a claimant claims disability based solely on pain, a three-part standard is utilized in assessing the credibility of his testimony.  The claimant must establish evidence of an underlying impairment and either: (1) objective medical evidence to confirm the severity of pain alleged, or (2) a finding that the

impairment is of such a severity that it can be reasonably expected to cause the pain alleged. *See, e.g.*, *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986); *Marbury v. Sullivan*, 957 F.2d 837 (11th Cir. 1992) (emphasis added).

## IV.  Analysis

This Court must remand the Commissioner's decision for failing to fully develop the record.

### A.    Pain:

While Plaintiff's medical records show positive results from her various orthopedic surgeries, the last one occurring in May 2002, the record also indicates that Plaintiff has not received treatment since late 2002.  According to her testimony (as supported by notations on some of her medical records), she was unable to seek medical treatment on a regular basis due to financial constraints.  Additionally, the SSA's consulting physician credited Plaintiff's complaints that she was in pain.  However, the physician noted "In order to determine specific tasks that she can and cannot perform, a functional capacity evaluation might be helpful."  (R. 219.)  There is no evidence that such an evaluation was completed by an examining or treating physician.  Accordingly, this action will be remanded in order for the SSA to obtain such an evaluation, preferably by a treating physician.[4]

_____

[4]  The Court notes that Plaintiff's treating orthopedist was unwilling to provide a disability determination.  (R. 97.)

The Court notes that Plaintiff testified to disabling migraine headaches which were controlled in the past when she was receiving weekly vitamin B-12 injections.  Upon remand, the SSA shall fully develop the record on this issue.

B.   Colitis:

With respect to her gastric impairments, Plaintiff's records show consistent complaints of diarrhea.   Additionally, the records show that Plaintiff complained she did not have the financial resources to purchase medications and that the medications were not effective.  Yet, the SSA failed to explain why Plaintiff's testimony with respect to the frequency and severity of her colitis problem was discredited.  Moreover, the SSA failed to obtain an opinion from Plaintiff's treating physician regarding this problem.

On remand, the SSA shall fully develop the record on this issue.

**V. Conclusion**

Therefore, by separate order, the decision denying benefits will be reversed and remanded for further proceedings.

Done this 29th day of February, 2008.

U.W. Clemon<br>
United States District Judge

11